**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 7, 2011

Lyle W. Cayce
Clerk

No. 10-20002

MELINDA LUERA,

Plaintiff – Appellee

v.

M/V ALBERTA, Its engines, tackle, apparel, equipment, furniture, accessories, appurtenances, etc., in rem, SAMOS SHIPPING CO. LTD., In Personam, WHITE DOLPHIN ENTERPRISES, INC.,

Defendants – Appellants

--------------------------------------------------------------------------------------------------

MELINDA LUERA,

Plaintiff – Appellee

v.

SAMOS SHIPPING CO. LTD., In Personam

Defendant – Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, STEWART, and OWEN, Circuit Judges.

KING, Circuit Judge:

Melinda Luera, a longshore worker, was injured while performing her job duties in the Port of Houston. Luera brought claims against two vessels, *in rem*,

No. 10-20002

asserting admiralty jurisdiction. In the same complaint, Luera also brought claims against the owners and managers of those vessels, *in personam*, asserting diversity jurisdiction and demanding a jury trial. The district court, over the defendants' objection, ordered that all of Luera's claims, including her *in rem* admiralty claims, be tried together before a jury. The defendants appeal, arguing that Luera is not entitled to a jury trial because she has elected to proceed under the admiralty rules by virtue of the *in rem* claims in her complaint. We affirm the order of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Melinda Luera was injured while working for Cooper/T. Smith Stevedoring Co., Inc. ("Cooper/T. Smith") in the Port of Houston. According to her complaint, Luera was working as a cargo checker on City Dock No. 23 on December 26, 2006, and performing stevedoring activities for the M/V VOC ROSE, which was moored to the dock. Luera alleges that the M/V ALBERTA passed the VOC ROSE in close proximity and at an excessive rate of speed, causing the VOC ROSE to surge. The surge in turn caused one of the mooring lines to rupture. The ruptured line struck Luera, and she suffered severe leg injuries.

Luera and Cooper/T. Smith sought to pursue claims for her injuries against both vessels[1] and their owners. First, Luera and Cooper/T. Smith obtained a Letter of Undertaking for the VOC ROSE on December 29, 2006 in

---

[1] It is a "long-standing admiralty fiction that a vessel may be assumed to be a person for the purpose of filing a lawsuit and enforcing a judgment." *Continental Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 22–23 (1960). Rules C and E of the Supplemental Rules for Admiralty or Maritime Claims provide the procedure for suing a vessel *in rem*. Rule C(1) provides that a vessel can be sued *in rem* only "[t]o enforce any maritime lien" and "[w]henever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto." The Longshore and Harbor Workers' Compensation Act specifically grants longshore workers like Luera an *in rem* claim for the negligence of a vessel. *See* 33 U.S.C. § 905(b).

No. 10-20002

the amount of $2.5 million.[2]  The same day, Cooper/T. Smith and its insurer, The American Equity Underwriters, Inc. on behalf of American Longshore Mutual Association ("American Equity"), filed a complaint in the District Court for the Eastern District of Louisiana ("Suit 1") against the ALBERTA, *in rem*; Samos Shipping Company, the alleged owner of the ALBERTA, *in personam*; and their unnamed liability insurers.  The complaint requested seizure of the ALBERTA, which was then located in the Port of New Orleans, and the sole alleged basis for the court's jurisdiction over all of the claims was admiralty jurisdiction under 28 U.S.C. § 1333.   In lieu of seizure, a Letter of Undertaking was issued on behalf of the ALBERTA in the amount of $2.5 million.

Luera immediately sought to intervene in Suit 1.  Her intervention complaint alleged no basis for subject matter jurisdiction for her claims against the defendants; Luera simply adopted Cooper/T. Smith's allegations, including the assertion of admiralty jurisdiction, in full.  No activity occurred in Suit 1 for several months, and on August 7, 2007, the parties filed a joint motion to transfer venue for Suit 1 to the Southern District of Texas.

On August 6, 2007, Luera filed a second complaint in the District Court for the Southern District of Texas ("Suit 2") against Samos Shipping, *in personam*, and Reese Development, Inc., the alleged owner of the VOC ROSE, *in personam*.  Luera asserted diversity jurisdiction under 28 U.S.C. § 1332 as the sole basis of subject matter jurisdiction.  She also demanded a jury trial.  On November 2, 2007, Luera initiated a third action in the District Court for the Southern District of Texas against the VOC ROSE, *in rem* ("Suit 3"), and, although Luera alleged no basis for jurisdiction, the case necessarily rested in

---

[2] "A traditional letter of undertaking provides that, in consideration of the vessel not being seized and released on bond, the vessel owner will file a claim to the vessel and pay any judgment rendered against the vessel even if the vessel itself is subsequently lost." *Panaconti Shipping Co., S.A. v. M/V Ypapanti*, 865 F.2d 705, 707–08 (5th Cir. 1989).

3

No. 10-20002

the district court's admiralty jurisdiction because the only claim was against a vessel. Luera then filed a motion to consolidate the three pending cases, and on November 12, 2007, the district court granted the motion and consolidated the three suits into the first-filed case.

Thereafter, the parties discovered that the ALBERTA was owned by White Dolphin Enterprises, Inc. ("White Dolphin"), and that Samos Shipping was merely the manager. They also discovered that while Reese Development owned the VOC ROSE, it was managed by J.P. Samartzis Marine Enterprises Co., S.A. ("J.P. Samartzis"). White Dolpin was added to Suit 1 as owner of the ALBERTA, and White Dolphin, Samos Shipping, and the ALBERTA then used Federal Rule of Civil Procedure 14(c) to file a third-party complaint tendering J.P. Samartzis to Luera as a third-party defendant in Suit 1.[3]

Luera then filed a motion to amend her complaint in Suit 2 to add White Dolphin and J.P. Samartzis as *in personam* defendants, which the district court granted. In response to Luera's motion to amend, Reese Development suggested that the district court should simplify the three consolidated cases by realigning the parties and unifying the pleadings under the court's admiralty jurisdiction. In its motion Reese Development also requested that the district court strike Luera's jury demand in Suit 2. The district court initially granted Reese Development's motion in full. Relying on our prior decisions in *T.N.T. Marine Service, Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585 (5th Cir. 1983) (per curiam), and *Durden v. Exxon Corp.*, 803 F.2d 845 (5th Cir. 1986), the district court held that Luera was not entitled to a jury trial because she had

---

[3] The benefit of Rule 14(c), available only for admiralty claims, is that the original plaintiff is "forced to assert his claims directly against the third-party defendant," whereas third-party practice under Rule 14(a) "does not automatically establish a direct relationship between [the] plaintiff and the third-party defendant." 6 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1465 (3d ed. 2010).

4

elected to proceed in admiralty by asserting both admiralty and diversity as bases for the court's subject matter jurisdiction.

Luera moved the district court for reconsideration of its order denying her a jury trial. Following a hearing on the matter, the district court issued a new opinion, in which it concluded that Luera had preserved her Seventh Amendment right to a jury trial by pleading diversity as the sole basis, rather than an alternate basis, for the court's jurisdiction over her claims against the *in personam* defendants in Suit 2. The district court reasoned that Luera's single allegation regarding subject matter jurisdiction for her *in personam* claims distinguished this case from our prior decisions in *T.N.T. Marine* and *Durden*. The court unified the pleadings in the three suits and granted Luera leave to amend her complaint to clarify that the sole asserted basis for the court's subject matter jurisdiction over the claims against all the *in personam* defendants was diversity jurisdiction.

As a result of the district court's order, the parties were realigned as follows: Luera as the sole plaintiff; Cooper/T. Smith and American Equity as intervenors with subrogation rights; Samos Shipping, *in personam*; White Dolphin, *in personam*; the M/V ALBERTA, *in rem* with White Dolphin appearing as registered owner under Rule E(8) of the Supplemental Rules for Federal Admiralty or Maritime Claims; Reese Development, *in personam*; J.P. Samartzis, *in personam*; and the M/V VOC ROSE, *in rem* with Reese Development appearing as registered owner under Rule E(8).

Luera then filed an amended complaint against all six defendants. In a separate "Jurisdiction" section, she asserted that the district court "has jurisdiction over the *in personam* Defendants based solely upon diversity of citizenship, 28 U.S.C. § 1332" and that the court "has jurisdiction over the *in rem*

No. 10-20002

Defendants based solely upon admiralty jurisdiction, 28 U.S.C. § 1333."[4]  She claimed damages "due to the negligence of each of the Defendants."

The defendants requested that the district court certify its order for appeal.  Finding that its order granting Luera a jury trial on all of her claims involved a controlling question of law as to which there was substantial ground for difference of opinion, the district court certified its order for appeal under 28 U.S.C. § 1292(b).  After we granted all defendants permission to appeal, Luera settled her claims with Reese Development and J.P. Samartzis, the owner and manager, respectively, of the VOC ROSE.  The remaining appellants are White Dolphin, Samos Shipping, and the ALBERTA (collectively, "Appellants").[5]

## II.   LEAVE TO AMEND

We first address whether the district court erred in permitting Luera to amend her complaint.  Prior to the unification of the pleadings, Luera had pleaded claims against Samos Shipping in Suit 1 under admiralty jurisdiction by intervening in that suit.  In addition, J.P. Samartzis was brought into Suit 1 under admiralty jurisdiction.  But Luera's claims against all of the *in personam* defendants in Suit 2 were premised on diversity jurisdiction.  Therefore, following unification of the pleadings, but before she amended her complaint, Luera had asserted claims against some of the defendants based on both admiralty jurisdiction and diversity jurisdiction.  As we explain below, the import of the dual bases for the district court's jurisdiction over these claims was that Luera may have elected under Rule 9(h) of the Federal Rules of Civil Procedure to proceed with all of her claims in admiralty, waiving her right to a

---

[4] Because § 1332 and § 1333 involve subject matter jurisdiction, rather than personal jurisdiction, we construe Luera's statements as asserting that the district court has jurisdiction over *the claims against* the defendants.

[5] Cooper/T. Smith and American Equity, who were originally parties to this appeal, also settled their claims with Luera and have been dismissed from the appeal.

jury trial. *See T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 587–88 (5th Cir. 1983). The district court conditioned its order granting Luera a jury trial on the filing of an amended complaint clarifying that Luera was asserting subject matter jurisdiction for all of her *in personam* claims on diversity only. Appellants argue that the district court erred in permitting Luera to amend her complaint. We review a district court's decision to grant or deny a plaintiff's request to amend her pleadings for an abuse of discretion. *Ayanbadejo v. Chertoff*, 517 F.3d 273, 276 (5th Cir. 2008) (per curiam).

As a preliminary matter, Luera argues that we cannot review the district court's decision granting her leave to amend her complaint because the issue was not certified for interlocutory review. Luera correctly observes that neither the Appellants' request for appeal nor the district court's order certifying the case for review addressed Luera's request to amend her complaint. However, this case is before us under 28 U.S.C. § 1292(b), which provides that a district court may certify an "order" for interlocutory appeal and that we may permit "an appeal to be taken from such order." "Because § 1292(b) provides for review of an *order* rather than review of a particular *question*, we are not restricted to the questions specified by the district court but 'may address any issue fairly included within the certified order.'" *Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 380 n.2 (5th Cir. 2004) (quoting *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996)). The district court granted Luera leave to amend her complaint in the order that it certified for interlocutory review. Therefore, we may assess the propriety of the district court's decision to allow Luera to amend her complaint.

The effect of Luera's amendment was to withdraw her Rule 9(h) election to proceed in admiralty, if there was any, with regard to her claims against the *in personam* defendants. A plaintiff's Rule 9(h) election is subject to the liberal standards for amending pleadings in Rule 15(a)(2), which provides that "[t]he

court should freely give leave [to amend] when justice so requires."   We have said that "Rule 9(h) is not a harsh rule," *T.N.T. Marine*, 702 F.2d at 588, and "[t]he pleader's identification of his claim as an admiralty or maritime claim or a failure to do so is not an irrevocable election," 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1314 (3d ed. 2004). Provided that there is no prejudice to the court or to the defendants, a plaintiff should be permitted to amend her complaint to change her Rule 9(h) election. *See Conti v. Sanko S.S. Co., Ltd.*, 912 F.2d 816, 818 (5th Cir. 1990).

Appellants argue that they were prejudiced by the amendment because Luera "exploited" admiralty procedures before the amendment. *See Brotherhood Shipping Co., Ltd. v. St. Paul Fire & Marine Ins. Co.*, 985 F.2d 323, 326 (7th Cir. 1993) (doubting that leave to amend should be freely given where a plaintiff has already "used the distinctive procedures of admiralty" because the plaintiff should not be permitted to "have the best of both procedural worlds").   We disagree. Luera obtained the benefit of admiralty procedures with regard to her claims against the vessels by suing them *in rem* and obtaining letters of undertaking for both vessels.  But she did not, and indeed she cannot, seek to change her Rule 9(h) election for those claims.  *See T.N.T. Marine*, 702 F.2d at 588 ("[A]n action against a vessel in rem falls within the exclusive admiralty jurisdiction.").   Rather, she sought to change only the election for her claims against the *in personam* defendants.

For those claims, only one unique admiralty procedure had been invoked before Luera amended her complaint.  Prior to the unification of the pleadings, Appellants used Rule 14(c) in Suit 1 to tender J.P. Samartzis to Luera as a third-party defendant.  Appellants were able to use this procedural device in Suit 1 because that suit was originally premised solely on admiralty jurisdiction. However, soon after Appellants tendered J.P. Samartzis to Luera under Rule 14(c), Luera amended her complaint in Suit 2 to add J.P. Samartzis as a

No. 10-20002

defendant, thereby asserting her claims directly against J.P. Samartzis. Appellants therefore suffered no prejudice by the loss of this procedural device available only in admiralty. Because Appellants were not prejudiced by the amendment, we hold that the district court did not abuse its discretion in permitting Luera to amend her complaint and withdraw any Rule 9(h) election she may have made.

### III.   JURY TRIAL

Having decided that the district court did not err in permitting Luera to amend her complaint, we now consider whether a jury trial is unavailable in this case because Luera asserted *in rem* admiralty claims against two vessels in the same complaint as her *in personam* claims premised on diversity jurisdiction.

### A.   Rule 9(h) and the Admiralty Designation

We first provide some background regarding admiralty jurisdiction and procedures. The Constitution provides that the judicial power of the federal courts "shall extend . . . to all Cases of admiralty and maritime Jurisdiction." U.S. CONST. art. III, § 2, cl.1. Congress implemented this constitutional grant through 28 U.S.C. § 1333(1), which provides that the district courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." This statutory grant gives federal courts jurisdiction over all admiralty and maritime cases, regardless of the citizenship of the parties or the amount in controversy.

Under the "saving to suitors" clause in § 1333, a plaintiff whose claim does not fall within the exclusive admiralty jurisdiction of the federal courts may bring her claim "at law" in state court. The saving to suitors clause also allows a plaintiff to bring her claim "at law" under the federal court's diversity jurisdiction, provided the requirements for diversity and amount in controversy are met. *Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355,

No. 10-20002

359–60 (1962); *see also* 14A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3672 (3d ed. 1998) (noting that a plaintiff with a claim cognizable in admiralty and at law has three choices: she may bring her suit in federal court under admiralty jurisdiction, in federal court under diversity jurisdiction, or in state court).

When a plaintiff's claim is cognizable under admiralty jurisdiction and some other basis of federal jurisdiction, the Federal Rules of Civil Procedure allow the plaintiff to expressly designate her claim as being in admiralty. Rule 9(h) of the Federal Rules of Civil Procedure provides:

> If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82, and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.

"Numerous and important consequences" flow from a plaintiff's decision to file her claim under the federal court's admiralty jurisdiction or its diversity jurisdiction. *T.N.T. Marine*, 702 F.2d at 586. One of the most important consequences relates to the rules of procedure that will be applied to the case. If a claim is pleaded under diversity jurisdiction, the rules of civil procedure will apply, and the parties will be guaranteed, under the Seventh Amendment, a right to have the claim tried by a jury. *Atl. & Gulf Stevedores*, 369 U.S. at 360. If the claim is pleaded under admiralty jurisdiction, however, the plaintiff will invoke "those historical procedures traditionally attached to actions in admiralty." *Durden v. Exxon Corp.*, 803 F.2d 845, 849 n.10 (5th Cir. 1986). One of the historical procedures unique to admiralty is that a suit in admiralty does not carry with it the right to a jury trial. *Waring v. Clarke*, 46 U.S. 441, 460 (1847); *see also Becker v. Tidewater, Inc.*, 405 F.3d 257, 259 (5th Cir. 2005).

No. 10-20002

Thus, "there is no right to a jury trial where the complaint contains a statement identifying the claim as an admiralty or maritime claim, even though diversity jurisdiction exists as well." *T.N.T. Marine*, 702 F.2d at 587.

By the plain terms of Rule 9(h), a claim cognizable only under admiralty jurisdiction does not require a Rule 9(h) election because admiralty procedures will automatically apply to that claim. Although Rule 9(h) appears to require an affirmative statement from the plaintiff to invoke the admiralty rules for claims cognizable under admiralty and some other basis of jurisdiction, we have held that the mere assertion of admiralty jurisdiction as a dual or an alternate basis of subject matter jurisdiction for a claim is sufficient to make a Rule 9(h) election to proceed in admiralty for that claim. *T.N.T. Marine*, 702 F.2d at 587–88. In *T.N.T. Marine*, the plaintiff brought an action against a vessel *in rem* and a dock *in personam*. *Id.* at 588. The complaint alleged both diversity and admiralty as alternate bases for the court's jurisdiction without specifying whether the plaintiff asserted a separate jurisdictional basis for each claim. *Id.* We held that by the "simple statement asserting admiralty or maritime claims" the plaintiff had elected to proceed under admiralty jurisdiction and procedures even without an explicit reference to Rule 9(h). *Id.*

Similarly, in *Durden v. Exxon Corp.*, the plaintiff, an injured seaman, filed an action against a vessel *in rem* and against its owners *in personam*, asserting that "the [c]ourt is vested with jurisdiction of this matter pursuant to the provisions of Title 28 Section 1332 of the United States Code *and/or* the General Maritime Law of the United States." 803 F.2d at 850 (emphasis added) (internal quotation marks omitted). The plaintiff later included a separate Jones Act claim against his employer, which carries a right to trial by jury. *Id.* at 847. The district court impaneled a jury to hear the case, but at the close of the plaintiff's evidence the court directed a verdict to the employer on the Jones Act claim, dismissed the jury, and tried the remaining claims to the bench. *Id.* We held

11

that the district court properly dismissed the jury because the non-Jones Act claims were brought under the court's admiralty jurisdiction with no right to a jury trial. *Id.* at 850. Under the rule announced in *T.N.T. Marine*, the plaintiff's allegation of admiralty as an alternate basis of jurisdiction was sufficient to make a Rule 9(h) election to proceed in admiralty for all of his claims. *Id.*

Following these cases, in this circuit a plaintiff who asserts admiralty jurisdiction as a basis for the court's subject matter jurisdiction over a claim has automatically elected under Rule 9(h) to proceed under the admiralty rules, even if she states that her claim is also cognizable under diversity or some other basis of federal subject matter jurisdiction. However, we have not addressed the specific issue presented in this case, which is whether the plaintiff automatically makes a Rule 9(h) election to proceed under the admiralty rules when she specifically asserts only diversity jurisdiction for one claim in the same complaint as a separate claim cognizable only under admiralty jurisdiction.

## B.   Luera's Rule 9(h) Election

After amendment, Luera's complaint stated six distinct claims:  She asserted negligence claims against both the VOC ROSE and the ALBERTA *in rem*, which are exclusively within the district court's admiralty jurisdiction. Luera also asserted negligence claims against Reese Development, J.P. Samartzis, White Dolphin, and Samos Shipping, *in personam*, based on the court's diversity jurisdiction.  Because Luera may only proceed *in rem* against the vessels by invoking federal admiralty jurisdiction, she necessarily made a Rule 9(h) election to proceed under the admiralty rules for her *in rem* claims. *See* FED. R. CIV. P. 9(h)(1) ("A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.").  Luera is clear, however, that she does not wish to make a Rule 9(h) election to proceed under the admiralty rules for her negligence claims against the *in personam* defendants.  Therefore, we must determine whether

12

No. 10-20002

Luera nevertheless necessarily made a Rule 9(h) election to proceed under the admiralty rules for her *in personam* claims by the mere presence of the *in rem* admiralty claims in her complaint.

Appellants argue that this case is controlled by our prior decisions in *Durden* and *T.N.T. Marine.* According to Appellants, these cases establish that when a plaintiff asserts alternative or dual bases of subject matter jurisdiction in a complaint, and one of those bases is admiralty jurisdiction, the plaintiff automatically makes a Rule 9(h) election to proceed in admiralty for the entire case. However, this case is readily distinguishable from *Durden* and *T.N.T. Marine.* In those cases, the plaintiffs had asserted both admiralty and diversity subject matter jurisdiction for *the same claim*. *Durden*, 803 F.2d at 849; *T.N.T. Marine*, 702 F.2d at 588. The plaintiffs in those cases, like Luera, could proceed against the vessels *in rem* only under admiralty jurisdiction, but, unlike Luera, the plaintiffs in *Durden* and *T.N.T. Marine* did not specifically assert diversity as the *only* basis for subject matter jurisdiction over their *in personam* claims. The rule flowing from *Durden* and *T.N.T. Marine*, therefore, is that a plaintiff who fails to choose between admiralty jurisdiction and some other basis of subject matter jurisdiction for a claim is presumed to have elected under Rule 9(h) to proceed under admiralty jurisdiction and the admiralty procedures *for that claim*. That presumption is not applicable here because Luera has not asserted alternate or dual bases of subject matter jurisdiction for her claims against the *in personam* defendants. Rather, she has definitively chosen to proceed under the district court's diversity jurisdiction for her *in personam* claims and is clear that she does not wish to elect admiralty procedures for those claims. Therefore, Luera cannot be said to have presumptively made a Rule 9(h) election for her *in personam* claims.

Appellants urge that the mere presence of *in rem* claim amounts to a 9(h) election for the remainder of her claims under *Durden* and *T.N.T. Marine.*

13

However, by its plain language, Rule 9(h) applies to "claims" and not to entire cases. FED. R. CIV. P. 9(h)(1) ("If a *claim* for relief is within the admiralty or maritime jurisdiction . . . , the pleading may designate the *claim* as an admiralty or maritime *claim*." (emphases added)). Additionally, "[a] single case can include both admiralty or maritime claims and nonadmiralty claims or parties." *Id.*, Advisory Committee Note (1997 Amendment). Luera clearly expressed her intent that her claims against the *in personam* defendants are premised on the district court's diversity jurisdiction, rather than its admiralty jurisdiction, and we therefore hold that Luera did not make a Rule 9(h) election to proceed under the admiralty rules for those claims.

**C.    Consolidation and the Right to a Jury Trial**

Although Luera did not make a Rule 9(h) election to proceed under the admiralty rules for her claims against the *in personam* defendants, the question remains whether her assertion of *in rem* admiralty claims in the same complaint nevertheless precludes a jury trial on her *in personam* claims. We conclude that the mere presence of admiralty claims in the same complaint as claims premised on diversity jurisdiction does not preclude a jury trial.

Appellants argue that we are foreclosed by our prior decisions in *T.N.T. Marine* and *Durden* from allowing a jury trial in this case. Other courts and commentators have construed these decisions as creating a rule in this circuit that the presence of an *in rem* admiralty claim in a complaint will preclude a jury trial. *See Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1057 (9th Cir. 1997) ("[I]n *T.N.T. Marine* . . . the Fifth Circuit held that the plaintiff had no right to a jury where he alleged both in personam and in rem claims."); *Webb v. Ensco Marine Co.*, 121 F. Supp. 2d 1049, 1052 (E.D. Tex. 2000) ("The crux of *Durden* is that, after the court dismissed the plaintiff's Jones Act claim, the plaintiff's claim against the vessel in rem 'invoked the unique power of the admiralty court.'" (quoting *Durden*, 803 F.2d at 849)); *Hamilton v. Unicoolship,*

No. 10-20002

*Ltd.*, No. 99 CIV 8791, 2002 WL 44139, at *3 (S.D.N.Y. Jan. 11, 2002) ("The Fifth Circuit has not allowed jury trials on claims brought under diversity jurisdiction combined with *in rem* admiralty claims."); Steven F. Friedell, *When Worlds Collide: The In Rem Jury and Other Marvels of Modern Admiralty*, 35 J. MAR. L. & COM. 143, 164 (2004) ("[The Fifth Circuit] has held that a plaintiff who sues a vessel *in rem* and its owner *in personam* is not entitled to a jury even if he alleges diversity jurisdiction in addition to admiralty jurisdiction.").

We agree with the district court in this case that such a reading of our prior cases is too broad. Although the court in *Durden* and *T.N.T. Marine* did rely on the existence of an *in rem* claim in the complaint as a reason for holding that a jury trial was unwarranted, the plaintiff's inclusion of an *in rem* claim was important only in the factual scenario presented in those cases. Because the plaintiffs in those cases had pleaded alternative bases of jurisdiction for their *in personam* claims, it was somewhat ambiguous whether the plaintiffs had made a Rule 9(h) election to pursue their *in personam* claims in admiralty, and we used the *in rem* claim as an indicator that the plaintiffs wanted to pursue all of their claims in admiralty. If the inclusion of the *in rem* claims was automatically fatal to a plaintiff's jury trial demand, there would have been no need for the court to consider the asserted bases for jurisdiction or the language used by the plaintiffs in their complaints. These cases are therefore best read as creating a rule regarding a plaintiff's Rule 9(h) election and not a complete prohibition on a jury trial where an *in rem* admiralty claim is asserted in the same complaint as a claim that would otherwise carry a right to a jury trial.

This case is instead controlled by the Supreme Court's decision in *Fitzgerald v. United States Lines Co.*, 374 U.S. 16 (1963). In *Fitzgerald*, a seaman was injured while working aboard a ship. In his complaint, the plaintiff alleged three separate claims against his employer: a negligence claim based on the Jones Act, an unseaworthiness claim, and a maintenance and cure claim.

15

No. 10-20002

*Id.* at 17.  The Jones Act claim carried a statutory right to a jury trial, but the unseaworthiness and maintenance and cure claims, brought under the court's admiralty jurisdiction, did not carry such a right.  *Id.*  The district court impaneled a jury to hear the Jones Act and unseaworthiness claims, and the jury found in favor of the employer on both claims.  *Id.*  The court then dismissed the jury and decided the maintenance and cure claim itself.  *Id.*  The plaintiff appealed, arguing that all of his claims should have been decided by the jury.  *Id.*

The Supreme Court held that it was error for the district court to dismiss the jury because all of the claims ought to have been tried together to the same fact finder.  *Id.* at 21.  The Court noted that the procedure used by the district court, trying a portion of the case to the jury and a portion to the bench, was commonly employed in Jones Act cases, but the Court concluded that separating the claims was an "outdated" and "wasteful" practice.  *Id.* at 18–20.  Splitting the claims "unduly complicates and confuses a trial, creates difficulties in applying doctrines of res judicata and collateral estoppel, and can easily result in too much or too little recovery."  *Id.* at 19.  The Court held that, because the claims arose out of one set of facts, "[o]nly one trier of fact should be used for the trial of what is essentially one lawsuit to settle one claim split conceptually into separate parts because of historical developments."  *Id.* at 21.

The Court's decision did not rest on any *right* of the plaintiff to have his admiralty claims tried by a jury:

> While this Court has held that the Seventh Amendment does not require jury trials in admiralty cases, neither that Amendment nor any other provision of the Constitution forbids them.  Nor does any statute of Congress or Rule of Procedure, Civil or Admiralty, forbid jury trials in maritime cases.

*Id.* at 20.  Because there was no "statutory or constitutional obstacle" to trying admiralty claims to a jury, the Court held that concerns of judicial efficiency and

16

the fair administration of justice override the historic tradition of trying admiralty claims to the bench. *Id.* at 20–21. These same concerns of inefficiency and potential problems applying res judicata and collateral estoppel are present whenever a claim carrying the right to a jury trial is joined with an admiralty claim that carries no right to a jury trial.

All of the circuits that have addressed the issue have concluded that, under *Fitzgerald*, admiralty claims may be tried to a jury when the parties are entitled to a jury trial on the non-admiralty claims. Most recently, in *Ghotra v. Bandila Shipping, Inc.*, the Ninth Circuit faced precisely the same issue we consider today. 113 F.3d 1050 (9th Cir. 1997). In *Ghotra*, the plaintiff, a marine surveyor, was killed while inspecting a vessel. *Id.* at 1053. His surviving family members brought three negligence claims premised on diversity jurisdiction against both the owner and charterer of the ship, and an *in rem* claim against the ship itself for negligence under admiralty jurisdiction. *Id.* The court held that the presence of the *in rem* claim in the complaint did not preclude a jury trial on the *in personam* negligence claims. *Id.* at 1057. Because the claims arose "out of the same factual circumstances," the court found "nothing inherently incongruous about bringing an *in rem* and an *in personam* claim together before the jury when the claims arise out of a single occurrence." *Id.*[6]

---

[6] The Ninth Circuit contemplated that the right to a jury trial might be limited in certain circumstances. The court noted that the plaintiffs had not "changed their mind[s] as to the jurisdictional basis in the midst of litigation." *Ghotra*, 113 F.3d at 1058. In addition, the plaintiffs had not "utilized the advantages of in rem procedures and then turned around to use the *same* claim as the basis for diversity jurisdiction." *Id.* Because neither of those circumstances is present in this case, we need not address the result if either circumstance were present here. Luera made clear from the beginning that she intended to file her *in personam* claims in diversity only, preserving her Seventh Amendment right to a jury trial on those claims. And although Luera did use admiralty procedures for her *in rem* claims, she did not use the benefits of admiralty procedures for the *same claim* on which she now demands a jury trial. *See Haskins v. Point Towing Co.*, 395 F.2d 737, 741 (3d Cir. 1968) ("There is no reason to make relinquishment of the procedural advantages of these inherent admiralty claims . . . the price for a jury trial.").

No. 10-20002

The Third and Fourth Circuits have also concluded that the presence of an admiralty claim does not defeat a plaintiff's properly preserved right to a jury trial. In *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148 (4th Cir. 1995), the Fourth Circuit held that "when the accident and injuries underlying the plaintiff's law and admiralty damage claims are the same, the considerations underlying the pragmatic rule of *Fitzgerald* dictate its application, even when the plaintiff has named different defendants in those claims." *Id.* at 154.[7] In *Blake v. Farrell Lines, Inc.*, 417 F.2d 264 (3d Cir. 1969), the plaintiff, an injured longshoreman, filed a complaint alleging negligence against the shipowner under diversity jurisdiction and demanded a jury trial. *Id.* at 265. The shipowner then filed a separate suit in admiralty against the stevedoring company alleging indemnity. *Id.* The district court consolidated the two suits, trying the entire case to a jury. On appeal, the shipowners contended that the court should not have tried the issues in the admiralty suit to the jury. *Id.* Relying on *Fitzgerald*, the Third Circuit concluded that "if the circumstances justify such action, a district court exercising section 1333 jurisdiction over a maritime claim may require that the issues of fact be tried to a jury" in "closely related actions or claims" involving "common issues of fact." *Id.* at 266.

---

[7] Part of the Fourth Circuit's holding in *Vodusek* is directly contrary to our holding in *Powell v. Offshore Navigation, Inc.*, 644 F.2d 1063 (5th Cir. Unit A May 1981). But we find the court's decision no less instructive. In *Vodusek*, the plaintiff filed a claim against a boat's manufacturer in diversity and a claim against the retailer in admiralty. 71 F.3d at 151. The court held that the admiralty claim against the nondiverse retailer did not destroy diversity jurisdiction for the plaintiff's claim against the diverse manufacturer. *Id.* at 154. We came to the opposite conclusion in *Powell*, holding that "the presence of a non-diverse defendant [sued] solely on the basis of federal admiralty jurisdiction will indeed implicate the rule of *Strawbridge v. Curtiss* and thereby destroy diversity jurisdiction." 644 F.2d at 1071. Because complete diversity was lacking in *Powell*, all of the plaintiff's claims were pleaded in admiralty and the plaintiff had no right to a jury trial. *Id.* Having found that no "at law" claims were pleaded in *Powell*, we did not reach the question presented in *Vodusek*, and in this case: whether the existence of an admiralty claim in the same complaint as an "at law" diversity claim bars the plaintiff's right to a jury trial on the diversity claim.

No. 10-20002

Despite this compelling authority, Appellants contend *Fitzgerald* does not apply to this case for several reasons. First, Appellants claim that the Federal Rules of Civil Procedure, unified with the admiralty rules in 1966, prohibit jury trials for all admiralty claims, and that *Fitzgerald* did not survive the unification of the rules. We find dubious any contention that *Fitzgerald* is no longer good law because we, like many other courts, have continued to apply *Fitzgerald* after the unification of the rules. *Daniel v. Ergon, Inc.*, 892 F.2d 403, 409 (5th Cir. 1990); *see also Haskins v. Point Towing Co.*, 395 F.2d 737, 742–43 (3d Cir. 1968) (dismissing argument that *Fitzgerald* did not survive unification).

Appellants nonetheless argue that the unified federal rules essentially provide them a *right* to a bench trial for admiralty claims. Rule 38(e) explains that the unified rules "do not create a right to a jury trial on issues in a claim that is an admiralty or maritime claim under Rule 9(h)." The Advisory Committee Notes to the 1966 amendment of Rule 9 similarly state, "It is no part of the purpose of unification to inject a right to jury trial into those admiralty cases in which that right is not provided by statute." Appellants are correct that the unification of the civil and admiralty rules "was intended to work no change in the general rule that admiralty claims are to be tried without a jury." *Romero v. Bethlehem Steel Corp.*, 515 F.2d 1249, 1252 (5th Cir. 1975). But "nothing in Rule 38(e) or the other rules prohibits a trial by jury on joined civil and admiralty claims." 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2315 (3d ed. 2008). In this sense, the Court's observation in *Fitzgerald*—that no "statute of Congress or Rule of Procedure, Civil or Admiralty, forbid[s] jury trials in maritime cases"—remains accurate. 374 U.S. at 20. Without an express prohibition on jury trials in admiralty cases, we agree with the Court in *Fitzgerald* that concerns of judicial economy and the fair administration of justice override the historic tradition of trying admiralty claims to the bench when the claims are closely related.

No. 10-20002

Indeed, the unified rules specifically contemplate hybrid proceedings such as the one in this case by providing that admiralty and non-admiralty claims can be brought together in the same action.  Rule 20(a)(2) provides, "Persons—as well as a vessel, cargo, or other property subject to admiralty process in rem—may be joined in one action as defendants."  Appellants' argument would require us to construe a plaintiff's joinder of admiralty and non-admiralty claims under Rule 20 as an implied waiver of her right to a jury trial.  To be sure, Luera could have waived her Seventh Amendment right to a jury by pleading her *in personam* claims under the district court's admiralty jurisdiction, *see T.N.T. Marine*, 702 F.2d at 588, but she did not do so in this case.  We do not construe her joinder of claims, which is allowed by the rules, as an implicit waiver of her constitutional right to a jury trial.  *See* FED. R. CIV. P. 38(a) ("The right of trial by jury as declared by the Seventh Amendment . . . is preserved to the parties inviolate."); *see also Ghotra*, 113 F.3d at 1057 (noting that the "liberal joinder rules" permit claims to be brought in a single action while "preserv[ing] any statutory or constitutional right to a jury trial") (internal citation and quotation marks omitted).

Moreover, where such claims are not joined under Rule 20 but brought in separate suits, Rule 42(a) provides district courts with broad authority to consolidate actions that "involve a common question of law or fact."  We find it persuasive that Luera could, and at the outset she did, bring her *in rem* and *in personam* claims in separate actions.  With the claims pending in separate actions, there is no question that Luera was entitled to a jury trial on her *in personam* claims.  We see no reason why consolidation of those claims with the *in rem* admiralty claims into a single action should change the result.  *See Ghotra*, 113 F.3d at 1057 ("[W]e find no reason to penalize the [plaintiffs] by ruling that the decision to combine the two [claims] into one single action

20

constituted an election to proceed in admiralty alone without the right to jury trial.").

Second, Appellants attempt to distinguish *Fitzgerald* from this case on the basis that the Court permitted a jury trial for the unseaworthiness and maintenance and cure claims in *Fitzgerald* because those claims, though brought in admiralty, could have been brought at law. Unlike the admiralty claims in *Fitzgerald*, the *in rem* admiralty claims in this case are within the exclusive admiralty jurisdiction of the federal courts. *See T.N.T. Marine*, 702 F.2d at 588. Appellants claim that because *in rem* admiralty claims cannot be brought at law, they can never be tried before a jury. We disagree with Appellants' characterization of the claims in *Fitzgerald*. The *in rem* claims here and the *in personam* claims in *Fitzgerald* were all based on the court's admiralty jurisdiction. Although the plaintiff's unseaworthiness and maintenance and cure claims in *Fitzgerald* could have been brought at law, the plaintiff pleaded them as admiralty claims. Once the claims were within the admiralty jurisdiction of the court, the admiralty rules applied. The Court in *Fitzgerald* faced the same issue we face today: A plaintiff pleaded a claim for which she is entitled to a jury trial and an admiralty claim that does not confer that right. *Fitzgerald* is therefore not distinguishable on this basis, and we follow the Court's lead in permitting all of the claims to be tried to a jury where the claims "arise out of one set of facts." *Fitzgerald*, 374 U.S. at 21.

Finally, Appellants assert that the rule in *Fitzgerald* applies only in the context of Jones Act claims and should not be extended to cover the claims at issue in this case. This argument is premised on a supposed distinction between a statutory right to a jury trial and a constitutional right to a jury trial. Any distinction between a right to a jury in a Jones Act case and a right to a jury in a common law case is without a difference. *See Atl. & Gulf Stevedores*, 369 U.S. at 360 ("This suit being in the federal courts by reason of diversity of citizenship

carried with it, of course, the right to trial by jury. As in cases under the Jones Act . . . trial by jury is part of the remedy." (internal citations omitted)). Though Luera's *in personam* claims do not come with a statutorily mandated jury trial right, they are endowed with a *constitutionally* guaranteed right to a jury trial.[8] Appellants fail to demonstrate why Luera's Seventh Amendment right to a jury trial should be given less weight than a Jones Act plaintiff's statutory right to a jury trial.

Furthermore, claims against a vessel *in rem* fall exclusively under the federal court's admiralty jurisdiction. Plaintiffs asserting *in rem* claims against vessels have no choice but to elect to proceed under the admiralty rules for those claims. Under Appellants' theory, a plaintiff in Luera's position would be left with a Hobson's choice: she could either plead her *in personam* claims together with her *in rem* claims but waive her right to a jury trial, or she could preserve her right to a jury trial by pleading her *in personam* claims only and forgo a legally cognizable *in rem* claim. Plaintiffs should not be required to make such a choice when a third option remains—upholding the constitutional guarantee of a jury trial for the *in personam* claims.

The district court concluded that Luera's *in personam* claims, premised on diversity jurisdiction and subject to a timely jury demand, must be tried to a jury. The court was left with two options: try the case partially to the jury and partially to the bench, or try the entire case to the jury. As the district court recognized, *Fitzgerald* counsels that when one of a plaintiff's claims carries with it the right to a jury trial, the remaining claims, though premised on admiralty

---

[8] Appellants insist that Luera is not constitutionally entitled to a jury trial because the "saving to suitors" clause in § 1333 is not triggered for her *in rem* claims. But the clause *is* triggered for Luera's *in personam* claims, and she exercised the clause by bringing her claims in diversity rather than in admiralty. We are not willing to turn a blind eye to Luera's right to a jury trial under the saving to suitors clause for her *in personam* claims simply because the joined *in rem* claims do not fall within the clause.

jurisdiction, may also be tried to a jury "when both arise out of one set of facts." 374 U.S. at 21; *see also Blake*, 417 F.2d at 266 ("[O]nly by the decision of common issues of fact by a single trier of fact can the potential benefits of . . . consolidation be realized fully."). The district court, finding that all of the claims were "based on one event, causing one set of injuries, to one victim," held that the claims should be tried together to the jury. We hold that, consistent with *Fitzgerald*, the district court did not err by ordering that the claims should be tried together to a jury.

To be clear, we do not hold today that a plaintiff bringing an *in rem* admiralty claim, or any other claim brought under admiralty jurisdiction, has a *right* to a jury trial. No statute, rule, or constitutional provision confers such a right. But neither does any statute, rule, or constitutional provision provide Appellants with a *right* to a bench trial. The practice of trying admiralty claims to the bench is simply one of custom and tradition. That tradition cannot trump Luera's constitutional right to a jury trial for her non-admiralty claims, and "the non-jury component of admiralty jurisdiction must give way to the [S]eventh [A]mendment." *Ghotra*, 113 F.3d at 1057 (internal quotation omitted).

## IV. CONCLUSION

For the forgoing reasons, we AFFIRM the order of the district court.